**Portia KEEN, Appellant (Respondent),**

v.

**MARION COUNTY DEPARTMENT OF PUBLIC WELFARE, Appellee (Petitioner).**

No. 49A02–8701–JV–00010.

Court of Appeals of Indiana, Second District.

May 26, 1988.

Christopher B. Haile, Kenneth J. Falk, Legal Services Organization of Indiana, Inc., Indianapolis, for appellee.

Tony H. Abbott, Abbott & Walker, Indianapolis, for appellant.

BUCHANAN, Judge.

## CASE SUMMARY

Appellant-respondent Portia Keen (Keen) appeals from a judgment terminating her parental rights of her son, Billy Keen (Billy), claiming she was denied her right to counsel.

We affirm.

## FACTS

The evidence most favorable to the judgment indicates that Billy was removed from Keen's home in May of 1982 when the Indianapolis Police Department found him without food or furniture in the home, and the whereabouts of his mother was unknown. The Juvenile Division of the Marion Superior Court determined that Billy was a Child in Need of Services on December 20, 1983. Two months later Billy was made a ward of the Marion County Department of Public Welfare (the Department).

Billy has continuously been in foster care since his removal from Keen. Keen was in and out of jail on numerous occasions from 1982 through 1986.

On January 31, 1986, the Department filed a petition to terminate Keen's parental rights. The copy of the petition and summons were delivered to Keen's last known address, and receipt was acknowledged by Keen's sister. An initial hearing was held on March 13, 1986. Keen failed to appear and her court appointed counsel moved to withdraw his appearance because Keen had not responded to his attempts at communicating with her. The trial court determined that the case was eligible for default and set the default hearing for April 3, 1986. Keen again failed to appear on the 3rd of April and the matter was continued to May 22, 1986 at the behest of the Department in order to allow sufficient time for publication of notice. The trial court granted leave for Keen's court appointed attorney to withdraw his appearance.

On May 22, 1986, Keen appeared and requested counsel. The trial court appointed a public defender for her and continued the matter to July 10, 1986. Keen was provided several stamped envelopes addressed to her court appointed counsel to aid in her communications with him. Another continuance was granted because Keen was on vacation at the time the July 10 hearing was to be held. The matter was set for hearing on August 21, 1986.

Keen appeared with her court appointed counsel on August 21, 1986. Her attorney moved for continuance so that she could obtain private counsel. Keen expressed her dissatisfaction with the services of the public defender because of the lack of communication between them. Keen's request was made for the first time in open court on the day of trial, and all witnesses who had been subpoenaed were present. Reluctantly, the trial court granted Keen's request with the admonishment that she was waiving her right to court-appointed counsel and that there would be no further continuances of the trial:

THE COURT: "Ms. Keen, you understand that if the motion for continuance is granted today by the Court, and you are allowed opportunity to obtain private counsel, that you have in a sense waived your right to have Court appointed counsel. You've had services of the Public Defender's office for four years. If you are unable to obtain private counsel there is no opportunity to come back into Court and ask for a Public Defender again. Do you understand that?

MS. KEEN: Yes sir.

THE COURT: You're essentially waiving or giving up that right then by indicating today in Court that you are requesting a continuance, asking that the Public Defender's office withdraw their appearance on your behalf so that you may obtain an opportunity to get private counsel. Do you understand that?

MS. KEEN: Yes sir.

THE COURT: Do you understand further that if the Court grants the continuance today that it will be for a short while only? That when we return to Court[,] the Court will be expecting to go forward with this matter. That there will be no further continuances?

MS. KEEN: Yes sir.

. . . .

THE COURT: There may be a possibility where you may not be able to obtain private counsel either for lack of resources [sic] or other reason and the Court will expect you to be prepared to go foward [sic] at that time. You may have to represent yourself?

MS. KEEN: Yes sir.

THE COURT: That's how serious the consquenses [sic] are of the decision your [sic] willing to make by requesting your Court appointed counsel to withdraw his appearance. Do you understand that?

MS. KEEN: Yes.

THE COURT: I'm going to reluctantly grant the motion for continuance.

. . . .

THE COURT: And Ms. Keen, I can't emphasize strongly enough here what you're doing today. You are waiving or giving up your right to Court appointed

counsel. As this matter has been pending for four years now you will, that right will not be reinstated. You are waiving that and we are relying on her representations in open Court that you do plan to obtain private counsel in this matter and if you don't obtain private counsel in this matter when we come back to Court in October you will be expected to proceed accordingly. That may mean that you will not have counsel in this matter and you will be expected then to essentially to represent yourself. Do you understand that?

MS. KEEN: Yeah, I'll most definitely have counsel here the second [October 2, 1986]."

*Record* at 144–46, 153.

Keen had previously signed a form acknowledging that she read and understood the following advisements:

1. When the Juvenile Court terminates the parent-child relationship, all rights, powers, privileges, immunities, duties and obligations (including any rights to custody, control, visitation or support) pertaining to that relationship are permanently terminated, and your consent to the child's adoption by persons unknown to you is not required.

2. Parents have a right to the care, custody and control of their child as long as they fulfill their parental obligations.

. . . .

6. Parents are entitled to representation by counsel, provided by the State, if necessary, throughout any proceedings to terminate the parent-child relationship.

*Record* at 30.

On September 25, 1986, Keen advised the trial court that she would not have the money to hire a lawyer until October 1, 1986. The court advised her that she must be prepared to proceed with the trial on October 2, 1986. Keen did not have an attorney representing her on October 2, 1986 because she did not have the money to hire a lawyer. She requested the appointment of another public defender, but the court reminded her that she had waived that right on August 21, 1986. The proceedings were held and at the conclusion of the evidence the trial court terminated Keen's parental rights and approved adoption proceedings for Billy.

## ISSUE

Keen raises one issue:

Did the trial court err in determining that Keen waived her right to counsel?

## DECISION

PARTIES' CONTENTIONS—Keen claims that effective waiver of the statutory right of counsel in this proceeding requires as strict a standard as that applied in criminal cases. She asserts her waiver to the right of counsel was not knowingly and voluntarily made because the trial court did not inform her of the nature, extent, or importance of the right to counsel, and the disadvantages and consequences of a waiver of that right.

The Department responds that the determination of whether there has been a knowing and voluntary waiver of the right to counsel by a parent in a termination proceeding is not controlled by the application of criminal law standards. The Department argues that the trial court's colloquy with Keen was adequate to determine that Keen knowingly and voluntarily waived her right to counsel.

CONCLUSION—The trial court did not err in concluding that Keen knowingly and voluntarily waived her right to counsel.

Indiana undeniably recognizes the right to counsel in termination proceedings of the parent-child relationship. Ind.Code 31–6–5–3(7) (1982); IC 31–6–7–2(b); *see also In Re Laney* (1986), Ind.App., 489 N.E.2d 551. In this case of first impression, we are required to give meaning to the statutory requirement that in proceedings to terminate the relationship of parent and child, the parent is entitled to counsel unless that right is "knowingly and voluntarily" waived. *See* IC 31–6–7–3(e).

"Waiver is an election to forego some advantage that might otherwise have been insisted upon." *Salem Community School Corp. v. Richman* (1980), Ind.App., 406 N.E.2d 269, 274, *trans. denied.* In a

criminal proceeding, we impose "the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver [of the right to counsel] by the accused." *Johnson v. Zerbst* (1938), 304 U.S. 458, 465, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461; *see also Morgan v. State* (1981), Ind.App., 417 N.E.2d 1154. Not only must an accused be aware of the nature, extent and importance of the right to counsel, but the accused must be made aware of the dangers and disadvantages of self-representation and the possible consequences thereof so "his choice is made with his eyes open." *Wallace v. State* (1977), 172 Ind.App. 535, 361 N.E.2d 159, 164, *trans. denied.*

A parent's desire for and right to the companionship, care, custody and management of his or her child is an important interest. *Lassiter v. Department of Social Servs.* (1981), 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640. The need for counsel to protect this interest is heightened by the complexity of the proceeding and the incapacity of an uncounseled parent. *Id.* But are the strict advisements of criminal proceedings the *sine qua non* for a knowing and voluntary waiver to the right of counsel in a termination of parental rights proceeding?

Our review of relevant authority leads to the conclusion that parental termination actions are civil in nature and the stringent requirements prescribed for criminal cases are not required. Unlike the constitutional right to counsel in criminal proceedings, the due process clause does not mandate the right to counsel in all termination proceedings but is determined on a case by case basis. *Lassiter, supra.* In *Lassiter,* the Supreme Court declined to hold that indigent parents have, per se, a right to counsel at termination proceedings.

The majority was not persuaded by dissenting Justice Blackmun's reasoning that proceedings "to extinguish parental rights resembles in many respects a *criminal* prosecution" and "has an obvious accusatory and punitive force." *Id.* 452 U.S. at 42–43, 101 S.Ct. at 2167–68 (Blackmun, J., dissenting) (emphasis supplied). Neither

did the Court accept dissenting Justice Stevens' view that "even if the costs to the State were not relatively insignificant but rather were just as great as the costs of providing prosecutors, judges, and defense counsel to ensure the fairness of *criminal* proceedings, I would reach the same result in this category of cases." *Id.* at 60, 101 S.Ct. at 2176 (Stevens, J., dissenting) (emphasis supplied). Rather the Court explained, "as a litigant's interest in personal liberty diminishes, so does his right to appointed counsel." *Id.* at 26, 101 S.Ct. at 2159. Chief Justice Burger added that the purpose of a termination proceeding is not punitive, rather it is protective of the child's best interests. *Id.* (Burger, C.J., concurring).

In essence, parental termination actions are civil in nature. The burden of proof is framed as a clear and convincing standard. *E.g., J.K.C. v. Fountain County Dep't of Pub. Welfare* (1984), Ind.App., 470 N.E.2d 88; *In Re VMS* (1983), Ind.App., 446 N.E.2d 632. Another string to our bow is IC 31–6–7–1, which provides:

> "(a) In cases in which a child is alleged to be a delinquent child, the procedures governing criminal trials apply in all matters not covered by this article.
>
> (b) In cases in which a person is charged with a crime, the laws governing criminal trials apply.
>
> (c) In other cases, the Indiana Rules of Trial Procedure apply in all matters not covered by this article."

The commentary to IC 31–6–7–1 explains that those cases applying procedures governing criminal trials are in the nature of criminal cases. *Expressio unis est exclusio alterius.* If ordinary rules of trial procedure are applicable in these proceedings, the legislature must have intended fewer safeguards than that afforded when criminal procedures are applicable.

Two cases have considered the standard of advisements required for a knowing and voluntary waiver of counsel in these proceedings. The analysis in those cases are at opposite ends of the spectrum. An approach less restrictive than that required in criminal trials was adopted in *In Re Baby*

*Boy Myers* (1982), 58 Or.App. 622, 650 P.2d 113. The court determined that the father had sufficiently waived his right to counsel when he was informed of that right, was encouraged to obtain or allow the appointment of counsel, and his responses indicated he understood those rights.

Taking quite an opposite approach was *In Re Cobb* (1983), 130 Mich.App. 598, 344 N.W.2d 12. In *Cobb* there was no dispute that the parent's right to counsel was validly waived, but the parent subsequently requested counsel. The trial court denied the request because it was made too late and proceeded with the termination hearing. The Michigan appellate court observed that the circumstances were similar to a criminal case, concluding that one who initially waives counsel should be allowed to withdraw from self-representation if a legitimate reason for the change is shown and the substitution would not result in an unwarranted disruption prejudicial to the orderly progress of the case. The rationale of *Cobb* was premised on the due process right to counsel. *Id.* Unlike *Cobb*, Keen's argument is premised solely on statutory grounds. She has not attempted to rebut the presumption that "there is no right to appointed counsel in the absence of at least a potential deprivation of physical liberty." *Lassiter, supra,* 452 U.S. at 31, 101 S.Ct. at 2161.

The record reveals that Keen did have counsel but was dissatisfied. She was granted numerous continuances by the trial court. She was even provided stamped, addressed envelopes to assist her in communications with her previous court-appointed counsel. She was aware that she was entitled to appointed counsel yet she knowingly, intelligently, and voluntarily waived this right. The trial court emphasized over and again the importance of counsel and the seriousness of her decision in the event she had to represent herself. The nature and the serious consequences of a termination proceeding were explained to her in the written advisement which she acknowledged as having read and understood. The advisement explained all rights and privileges pertaining to custody, control, and visitation would be permanently terminated. So we can only conclude that the trial court properly determined that Keen waived her right to appointed counsel. Even in a criminal proceeding, a defendant may not disrupt orderly judicial administration through a deliberate process of discharging retained or assigned counsel whenever the case is called for trial. *German v. State* (1978), 268 Ind. 67, 373 N.E. 2d 880. One may go to the well only so many times.

Judgment affirmed.

SHIELDS, P.J., concurs.

SULLIVAN, J., concurs in result with separate opinion.

SULLIVAN, Judge, concurring in result.

An indigent parent's statutory right to counsel in a termination proceeding is obviously founded upon the constitutional right to due process. It is of no moment that the proceedings are denominated as "civil" rather than "criminal." *Lassiter v. Department of Social Services* (1981) 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640. This constitutional underpinning[1] to the right of counsel coupled with the grave consequences of the permanent and irrevocable deprivation lead me to conclude that waiver of the right should be tested by the standard employed in criminal cases. In this regard, I therefore disagree with the majority opinion.

Nevertheless, I believe the waiver of counsel issue in this case withstands strict scrutiny. I concur in the majority's conclusion that Ms. Keen knowingly and intentionally waived her right to appointed counsel and is appropriately held to the consequences of that waiver.

For this reason, I concur in the affirmance of the judgment.

---

**1.** Article 1, § 12 of the Indiana Constitution, as well as the fourteenth amendment to the United States Constitution, affords due process.