**In re the Marriage of Charles Louis TAYLOR, Appellant–Respondent,**

**v.**

**Marie Ann (Taylor) SCOTT, Appellee–Petitioner.**

**In the Matter of the ADOPTION OF Jessica Lynn TAYLOR.**

**No. 49A02–9002–CV–76.**[1]

Court of Appeals of Indiana, Fifth District.

May 13, 1991.

Thomas R. Barnes, Indianapolis, for appellant-respondent.

Joseph H. Yeager, Jr., J. Joseph Tanner, Baker & Daniels, Indianapolis, for appellee-petitioner.

SHARPNACK, Judge.

This is an appeal of an order which terminated the parental rights of appellant Charles Taylor and appellee Marie Ann (Taylor) Scott, the natural parents of the minor Jessica Lynn Taylor, and granted the adoption petition of appellees Steve and Trina Fishburn. The case finds its origins in the dissolution of the marriage of Charles and Marie Ann. In the 1987 decree of dissolution the divorce court granted Marie Ann custody of Jessica and ordered Charles to pay child support. No further court action occurred until 1989 when Charles filed a petition for modification of custody, an emergency motion for

1. This case has been diverted to this office by order of the Chief Judge.

transfer of custody, a verified motion for modification of child support, an emergency motion for abatement of child support, and a motion for a custody evaluation by the domestic relations bureau. The court set a hearing on these pleadings for January 27, 1989.

Marie Ann filed a petition for contempt for child support arrearages on the 27th. The court conducted a conference with the parties' attorneys that same day. As a result of this conference, the court entered an order, which, among other things, awarded the Fishburns, who had been keeping the child, temporary custody of Jessica, permitted Charles visitation rights with Jessica, and ordered Charles to pay child support to the Fishburns.

Less than a month after the entry of this order, the Fishburns filed a petition for adoption. The court set a hearing on the adoption petition for May 22. Charles requested consolidation of the two actions, which was granted.

Charles was represented by three different attorneys from the time he filed his petition for change of custody until the morning of the hearing on the Fishburns' adoption petition. The first attorney withdrew because Charles had not paid fees which he owed. The second, a Legal Services Organization (LSO) attorney, withdrew because she believed that Charles, in violation of his agreement with LSO, was not cooperating with her attempts to respond to the Fishburns' discovery requests. Charles fired his third attorney on the morning of the hearing. The court proceeded with the hearing after allowing Taylor's attorney to withdraw and without any advice to or discussion with Taylor about any right to counsel or the hazards of proceeding without counsel. Charles did not request a continuance to retain new counsel; instead, he waited until after the court had heard a substantial portion of the Fishburns' case before he requested a continuance, not to search for new counsel, but to allow himself more time to organize

his own presentation of the case. The court refused to continue the hearing.

Charles raises six issues on appeal. Because we reverse, we need only address the following issue:

Did the trial court violate Charles's statutory right to counsel by failing to inform him of his rights and by proceeding with the hearing on the termination of Charles's parental rights after Charles discharged his third attorney?

Charles argues that the trial court erred in proceeding with the hearing on the termination of his parental rights without instructing him as to his federal constitutional and state statutory rights to counsel, without informing him that counsel would be appointed for him if he was indigent, and without inquiring into his ability to pay for counsel. The Fishburns offer three arguments in response: that Charles waived any right to appointed counsel; that Charles had no federal constitutional right to counsel; and that Charles had no statutory right to counsel.

Charles argues that, because the trial court was determining whether to terminate his parental rights in this adoption proceeding, he was entitled to the rights which our statutes guarantee to parents in involuntary termination proceedings. He asserts that, under our involuntary termination statute, he was entitled to be informed of his right to counsel and his right to appointed counsel if he did not have the resources to retain private counsel.

■ In Indiana, the right to counsel in proceedings to terminate parental rights is granted by statute. IND.CODE § 31-6-3-2(c); *Keen v. Department of Public Welfare* (1988), Ind.App., 523 N.E.2d 452, 454; *In re Laney* (1986), Ind. App., 489 N.E.2d 551, 554. In order to protect the right, our statutes also provide that the trial court must inform the parents in involuntary termination *both* of their right to be represented by counsel and their right to appointed counsel if they are indigent. I.C. § 31-6-5-3(7)[2]; *see Keen,*

---

**2.** This section provides, "[T]he parents must be advised that ... they are entitled to representation by counsel, provided by the state if necessary, throughout any proceedings to terminate

523 N.E.2d at 454–456. The rights afforded by the involuntary termination statutes apply in adoption proceedings where the petitioners seek to adopt over the objections of one or both of the natural parents. *In re McClure* (1990), Ind.App., 549 N.E.2d 392, 394, *see also In re Dove* (1977), 174 Ind.App. 464, 468, 368 N.E.2d 6, 9 *reh. denied* 174 Ind.App. 464, 371 N.E.2d 387.

■ Here, Charles possessed three related statutory rights: the right to be represented by counsel; the right to have counsel provided if he could not afford private representation; *and the right to be informed of the two preceding rights.* The court failed to inform him of his right to counsel, and therefore denied him the rights guaranteed by our statute.

■ The Fishburns argue that Charles waived any statutory right to counsel. They point out that I.C. § 31-6-7-3 provides, "A parent who is entitled to representation by counsel may waive that right if he does so knowingly and intelligently." They argue that Charles had counsel at various stages in these proceedings, and that he lost counsel through his own fault. They cite *Keen* for the proposition that one may waive the right to counsel by discharging retained counsel.

The Fishburns misconceive the nature of waiver of the right to counsel under these statutes. It is true that *Keen* held that the trial court need not do as much to insure that a waiver of the right is knowing, intelligent, and voluntary as it would if it were dealing with a defendant in a criminal case. 523 N.E.2d at 455. *Keen* did not, however, dispense with the requirement that there be some showing that a waiver is knowing, intelligent, and voluntary. In *Keen,* the trial court had explicitly informed the parent that, if she did not retain counsel within the time the court allowed her after she discharged court appointed counsel, the court would make her present her case without benefit of counsel. In addition, the court warned her of the dangers of proceeding without representation. Finally, she had signed a printed sheet which contained a statement of her right to counsel, and which stated that she had read and understood her rights. On the basis of these facts, Judge Buchanan found she had knowingly and intelligently waived her right to counsel:

> The record reveals that Keen did have counsel but was dissatisfied. She was granted numerous continuances by the trial court. She was even provided stamped, self addressed envelopes to assist her in communications with her previous court appointed counsel. She was aware that she was entitled to appointed counsel yet she knowingly, intelligently, and voluntarily waived this right. *The trial court emphasized over and again the importance of counsel and the seriousness of her decision in the event she had to represent herself. The nature and serious consequences of a termination proceeding were explained to her in the written advisement which she acknowledged as having read and understood.* The advisement explained all rights and privileges pertaining to custody, control, and visitation would be permanently terminated. *So we can only conclude that the trial court properly determined that Keen waived her right to appointed counsel.*

523 N.E.2d at 456 (emphasis added).

Here, nothing on the record indicates that Charles was ever informed of his right to counsel. Nothing indicates that the trial court warned him that he might have to proceed without counsel if his third attorney withdrew his appearance, and, most importantly, nothing on the record demonstrates that the trial court did anything to impress upon Charles the serious consequences he faced if he represented himself. Unlike in *Keen,* nothing in this case supports the theory that Charles knowingly, intelligently, and voluntarily waived his right to trial. Although this court is reluctant to disturb the decision of the lower court in this matter, we find that Charles was deprived of an essential right and we must therefore reverse and remand for a

the parent-child relationship against their

will...."

new hearing at which Charles should be afforded the right to counsel.

REVERSED AND REMANDED.

ROBERTSON and RUCKER, JJ., concur.