859 N.E.2d 737 (2007)
In the Matter of D.H., J.H., J.B.H., L.H. and N.H.
Diana Hatchett, Appellant-Respondent,
v.
Marion County Office of Family and Children, Appellee-Petitioner, and
Child Advocates, Inc., Co-Appellee (Guardian Ad Litem).
No. 49A05-0606-JV-318.
Court of Appeals of Indiana.
January 10, 2007.
*738 Jan B. Berg, Indianapolis, IN, Attorney for Appellant.
Donna Lewis, Indianapolis, IN, Attorney for Appellee.

OPINION
SHARPNACK, Judge.
Diana Hatchett ("Mother") appeals the trial court's determination that D.H., Ja. H., Ju.H., L.H., and N.H. (collectively, "Children") are children in need of services ("CHINS"). Hatchett raises two issues, which we restate as:
I. Whether the trial court abused its discretion by excluding certain cross examination of S.L. under the Rape Shield Statute; and
II. Whether the evidence is sufficient to support the trial court's finding that the Children are CHINS.
We reverse.
The relevant facts follow. Mother has six children, S.L., born January 1988, Ju. H., born March 1992, D.H., born October 1994, Ja.H., born October 2000, L.H., and N.H., twins who were born in July 2002. Judge Hatchett, Sr. ("Hatchett"), is the father of all of the children except S.L. Antonio Lipscomb ("Lipscomb") is the father of S.L.
On August 26, 2005, the Marion County Department of Child Services ("MCDCS") received a report in which seventeen-year-old S.L., who was the subject of a CHINS petition and was residing in foster care, alleged that she had been molested by her stepfather, Hatchett, several years earlier when she was in second through fourth grade. The MCDCS removed the Children and filed a petition alleging that the Children were CHINS because:
[O]ne or more of the children's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of a parent, guardian or custodian to supply one or more of the children with necessary food, clothing, shelter, medical care, education or supervision; and the children need care, treatment or rehabilitation that the children are not receiving and are unlikely to be provided or accepted without the coercive intervention of the Court, as show by the following, to wit:
A) On or about September 6, 2005, the Department of Child Services (DCS) determined, by its Family Casemanager *739 (FCM) Susan Jacobs, these children to be children in need of services because their sibling, [S.L.], who is a current ward under cause number 49D09-0507-JC-28528, was molested by [Hatchett]. [S.L.] indicated that the [sic] when the molest occurred, she advised [Mother], but that [Mother] took no protective measures other than to send [S.L.] to reside with [Lipscomb]. Due to the untreated sexual perpetration issues of [Hatchett] and [Mother's] failure to take appropriate protective measures with regards to her children, all of the children are endangered in the family home.
* * * * *
Appellant's Appendix at 47.
Mother and Hatchett denied the petition's allegations. At a factfinding hearing, S.L. testified that between second grade and fourth grade, her stepfather, Hatchett, had touched her legs and "private part" on more than ten occasions. Transcript at 63. According to S.L., she told Mother about the abuse at the end of her fourth grade year, and Mother sent S.L. to live with S.L.'s father, Lipscomb. Mother testified that S.L. had told her that Hatchett had been touching her but that S.L. did not give Mother specific details. As a result, Mother took S.L. to the doctor, talked to the Children, confronted Hatchett, talked to members of Hatchett's family regarding the accusation, and sent S.L. to live with Lipscomb.
S.L. lived with Lipscomb for one and one-half years. Her relationship with Lipscomb and his wife deteriorated, and Lipscomb suddenly returned S.L. to Mother during S.L.'s sixth grade year. S.L. later alleged that Lipscomb had molested her. After being at home with Mother and Hatchett for approximately two years, S.L. started running away and lived with various friends and relatives. Eventually, Mother refused to allow S.L. to return to the family's home, and S.L. was declared a CHINS.
During cross examination of S.L., Mother's attorney sought to question S.L. regarding a prior miscarriage, her accusations against Lipscomb, and her sexual history. The State objected based upon the Rape Shield Statute. The trial court sustained the objections regarding evidence of S.L.'s miscarriage, abuse by anyone other than Hatchett, and S.L.'s sexual history, but the trial court later allowed testimony regarding abuse by Lipscomb over the State's objection. There was no allegation or evidence presented in the factfinding hearing that the Children had been abused.
After the factfinding hearing, the trial court entered the following findings of fact and conclusions thereon:
* * * * *
17. [S.L.] testified at the factfinding hearing of February 23, 2006, that [Hatchett] sexually abused her, from her second grade year to her fourth grade year; it happened at least ten times. The sexual abuse alleged was the touching of the private parts and legs.
18. [S.L.] disclosed the alleged abuse to [Mother] when she was in the fourth grade. She never told her siblings about the alleged abuse.
19. Soon after disclosing the alleged abuse to her mother, [S.L.] was sent to live with her father, [Lipscomb], in Illinois.
20. [S.L.] received counseling for sexual abuse at the Legacy House.
21. All of the Hatchett children lived in the home with [Mother] and [Hatchett] at the time of the allegations, and remained in the home after *740 [S.L.] disclosed the allegations to her mother.
22. [Mother] never sent the Hatchett children to live elsewhere after the disclosure by [S.L.].
23. [S.L.] didn't disclose the alleged abuse earlier because she didn't think anybody would believe her.
24. [S.L.] disclosed the abuse to Emily Haile, a clinician at Midtown in August 2005.
25. [S.L.] did not disclose the alleged sexual abuse to Lynn Zinn, her probation officer.
26. [S.L.'s] siblings, [Ju.H.] and [D.H.] did not witness any inappropriate contact between [Hatchett] and [S.L.].
27. [Mother] took [S.L.] to Wishard Hospital following the disclosure. No evidence of physical or sexual abuse was discovered. However, due to the time frame as well as the nature of the allegations, the Court finds the lack of physical evidence to be inconclusive.
28. The Court declines to conclude that [Hatchett] is guilty of any criminal offense stemming from the allegations in this CHINS proceedings, nor will the Court specifically find that the allegations made by [S.L.] to be true or not true.
29. However, the Court finds the allegations made by [S.L.] to be credible.
If any Finding of Fact is more appropriately a Conclusion of Law, it is so designated.
CONCLUSIONS OF LAW:
* * * * *
9. The sister of the Hatchett children, [S.L.] alleged sexual abuse from [Hatchett] and the allegations, if true, will endanger the well being of the Hatchett children.
10. The Hatchett children are endangered because the sexual abuse allegations occurred when the children were residing with [Mother] and [Hatchett], and the children continued to reside in the home with an alleged perpetrator.
11. The condition was unlikely to be remedied without the coercive intervention of the Court.
12. [The Children] need care and treatment that will not be provided without the coercive intervention of the Court.
13. [Mother] and [Hatchett] need services to assist them in appropriately parenting their children.
14. Due to the allegations raised by [S.L.], and the response by [Mother and Hatchett], the Court finds the Hatchett children to be in need of services, as to [Mother and Hatchett].
* * * * *
Appellant's Appendix at 133-135.

I.
The first issue is whether the trial court abused its discretion by excluding certain cross examination of S.L. under the Rape Shield Statute. We review a trial court's ruling to exclude or admit evidence under an abuse of discretion standard. In re P.E.M., 818 N.E.2d 32, 38 (Ind.Ct.App. 2004). An abuse of discretion occurs if a trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. Id. Moreover, "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." Ind. Evidence Rule 103.
During the factfinding hearing, S.L. was questioned regarding a prior miscarriage, her accusations against Lipscomb, and her sexual history, and the State objected based upon the Rape Shield Statute. The trial court sustained the objections regarding *741 evidence of S.L.'s miscarriage, abuse by anyone other than Hatchett, and S.L.'s sexual history, but the trial court later allowed testimony regarding abuse by Lipscomb. On appeal, Mother argues that the Rape Shield Statute was inapplicable, that these topics were relevant to challenging S.L.'s credibility, and that the trial court denied Mother's due process rights by limiting S.L.'s cross examination.
The Rape Shield Statute, Ind.Code § 35-37-4-4, see also Ind. Evidence Rule 412, expressly applies to prosecutions for sex crimes. Barnes v. Barnes, 603 N.E.2d 1337, 1342 (Ind.1992), superceded in part on other grounds in Sears Roebuck & Co. v. Manuilov, 742 N.E.2d 453, 457 (Ind. 2001). The Rape Shield Statute "was not enacted to apply in civil cases" and does not "apply to exclude evidence in civil cases." Id. at 1342-1343. A CHINS proceeding is a civil action. See Baker v. Marion County Office of Family & Children, 810 N.E.2d 1035, 1039 (Ind.2004) ("[C]riminal prosecutions and termination proceedings are substantially different in focus. The resolution of a civil juvenile proceeding focuses on the best interests of the child, not on guilt or innocence as in a criminal proceeding."); In re J.Q., 836 N.E.2d 961, 964 n. 1 (Ind.Ct.App.2005) ("A CHINS proceeding is civil in nature. . . ."), reh'g denied; Keen v. Marion County Dept. of Public Welfare, 523 N.E.2d 452, 455 (Ind.Ct.App.1988) ("[P]arental termination actions are civil in nature."). Thus, the Rape Shield Statute does not apply in CHINS proceedings, and the trial court abused its discretion by excluding the evidence based upon the Rape Shield Statute.
Despite the exclusion of the evidence based upon the Rape Shield Statute, we conclude that any error was harmless and did not affect Mother's substantial rights because the excluded testimony was cumulative of other admitted evidence.[1]See, e.g., Hite v. Haase, 729 N.E.2d 170, 180 (Ind.Ct.App.2000) (holding that any error in the exclusion of evidence was harmless because the excluded testimony was cumulative of other evidence). Although the State objected to some questions regarding S.L.'s prior miscarriage, her accusations against Lipscomb, and her sexual history, other evidence of these events was admitted during the factfinding hearing without objection. Evidence was admitted that S.L. was, at the time of the hearing, pregnant with her boyfriend's baby. S.L. testified that she had previously been pregnant. Evidence was admitted that S.L. accused Lipscomb of molesting her. We conclude that any error in the exclusion of the evidence based upon the Rape Shield Statute was harmless because the excluded testimony was cumulative of other admitted evidence.

II.
The next issue is whether the evidence is sufficient to support the trial court's finding that the Children are CHINS. The trial court entered findings of fact and conclusions thereon pursuant to Ind. Trial Rule 52(A). We may not set aside the findings or judgment unless they are clearly erroneous. Menard, Inc. v. Dage-MTI, Inc., 726 N.E.2d 1206, 1210 (Ind.2000), reh'g denied. In our review, we first consider whether the evidence supports the factual findings. Id. Second, *742 we consider whether the findings support the judgment. Id. "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." Quillen v. Quillen, 671 N.E.2d 98, 102 (Ind.1996). A judgment is clearly erroneous if it relies on an incorrect legal standard. Menard, 726 N.E.2d at 1210. We give due regard to the trial court's ability to assess the credibility of witnesses. Id. While we defer substantially to findings of fact, we do not do so to conclusions of law. Id. We do not reweigh the evidence; rather we consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment. Yoon v. Yoon, 711 N.E.2d 1265, 1268 (Ind.1999).
"The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children." Bester v. Lake County Office of Family & Children, 839 N.E.2d 143, 147 (Ind.2005). "A parent's interest in the care, custody, and control of his or her children is `perhaps the oldest of the fundamental liberty interests.'" Id. (quoting Troxel v. Granville, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000)). "Indeed the parent-child relationship is `one of the most valued relationships in our culture.'" Id. (quoting Neal v. DeKalb County Div. of Family & Children, 796 N.E.2d 280, 285 (Ind. 2003)).
Ind.Code § 31-34-1-1 (Supp.2005) provides that:
A child is a child in need of services if before the child becomes eighteen (18) years of age:
(1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and
(2) the child needs care, treatment, or rehabilitation that:
(A) the child is not receiving; and
(B) is unlikely to be provided or accepted without the coercive intervention of the court.
In the petition, the MCDCS alleged that the Children's physical or mental condition was seriously endangered as a result of the inability, refusal, or neglect of Mother and Hatchett to supply the Children with "necessary food, clothing, shelter, medical care, education or supervision" and the Children "need[ed] care, treatment or rehabilitation that the [C]hildren are not receiving and are unlikely to be provided or accepted without the coercive intervention of the Court," because the Children's sibling, S.L., was molested by Hatchett and because Mother took no protective measures other than to send S.L. to reside with Lipscomb. Appellant's Appendix at 47. The MCDCS had the burden of proving by a preponderance of the evidence that under the above statutes the Children were CHINS. In re E.M., 581 N.E.2d 948, 952 (Ind.Ct.App.1991), trans. denied; Ind. Code § 31-34-12-3.
Mother argues that the evidence is insufficient to sustain the trial court's conclusion that the Children are CHINS. Mother argues that the evidence demonstrated that S.L. is a "very troubled young woman" who has "engaged in a pattern of lying, deceit and manipulation which has devastated her family." Appellant's Brief at 12. Mother contends that S.L. has repeatedly made "unfounded allegations of sexual abuse to get what she wanted." Id. at 15. According to Mother, the allegations of the CHINS petition were not proven because the trial court specifically declined to find that Hatchett molested *743 S.L. Despite the trial court's finding regarding the molestation, the trial court concluded that the Children were CHINS.
Mother relies in part upon Maybaum v. Putnam County Office of Family & Children, 723 N.E.2d 951 (Ind.Ct.App.2000). In Maybaum, the Putnam County Office of Family and Children ("PCOFC") alleged that the Maybaums' daughter was a victim of a sex offense. 723 N.E.2d at 952. The PCOFC filed a petition alleging that the daughter was a CHINS because her father had forced her to perform oral sex on him at the family residence. Id. The parents denied the allegations. Id. After a factfinding hearing, the trial court concluded that there was insufficient evidence to find that the father had molested the daughter. Id. at 953. However, the trial court concluded that the daughter was a CHINS because the evidence revealed that: (1) she had been a victim of molestation; (2) a genital examination indicated clear evidence of a penetrating injury; and (3) the evidence indicated incidents of sexual activity and abuse with incidents of masturbation and sexual exploration with siblings. Id.
On appeal, we reversed the CHINS determination, concluding that the CHINS finding was based upon a statutory provision and facts not alleged in the CHINS petition. We noted that a CHINS petition must contain "[a] citation to the provision of the juvenile law that defines a child in need of services" and "[a] concise statement of the facts upon which the allegations are based, including the date and location at which the alleged facts occurred." Id. at 954 (citing Ind.Code § 31-34-9-3). We concluded that the "CHINS petition is an integral part of ensuring that the parents have notice of the allegations and an opportunity to contradict the OFC's evidence" and that the parents did not have notice of allegations other than the ones in the CHINS petition. Id. at 954. In reversing due to the lack of notice, we held:
While we certainly understand the trial court's sincere desire to obtain what might eventually prove to be much-needed services for P.M., to permit the trial court to base its decision upon a theory not set forth by the OFC would contravene the purpose of the CHINS statutes, which specifically require the OFC to provide a citation to the precise section of the CHINS statute and the specific facts underlying the allegation. Further, when parents do not receive notice of the specific allegations against them, they do not know what evidence to present on their behalf, which evidence or witnesses to obtain by compulsory process, or which questions to ask during cross-examination, rights explicitly granted under the CHINS statute.
Id. at 956.
Here, unlike in Maybaum, Mother had notice of the allegations of the petition, which were that Hatchett had molested S.L. and that Mother had failed to take measures to protect the Children. However, although the trial court found the allegations made by S.L. to be credible, the trial court specifically declined to find that the allegations made by S.L. were true or not true. Based upon these findings, the trial court concluded: "The sister of the Hatchett children, [S.L.], alleged sexual abuse from [Hatchett] and the allegations, if true, will endanger the well being of the Hatchett children." Appellant's Appendix at 134. (emphasis added).
As noted above, the MCDCS had the burden of demonstrating that the Children were CHINS by a preponderance of the evidence. At no point did the trial court find that the MCDCS proved the allegations of the petition by a preponderance of the evidence. Moreover, the trial court *744 did not find that the Children were seriously endangered as required under Ind. Code § 31-34-1-1; rather, the trial court found that, if the allegations were true, the Children would be endangered. As in Maybaum, while we understand the trial court's desire to obtain what might be much needed services for this family, to permit the Children to be declared CHINS based upon speculation that the Children would be endangered if the allegations regarding S.L. were true would contravene the CHINS statutes. We conclude that the trial court's judgment that the Children are CHINS is clearly erroneous. See, e.g., Maybaum, 723 N.E.2d at 956 (reversing the trial court's judgment that the child was a CHINS where the parents did not receive notice of the allegations found by the court); E.M., 581 N.E.2d at 955-956 (reversing the trial court's judgment that the child was a CHINS); cf. In re A.H., 751 N.E.2d 690, 701-702 (Ind.Ct. App.2001) (affirming the trial court's judgment that the child was a CHINS where the trial court specifically found the child was the victim of sexual misconduct with a minor and the petition alleged that the father molested the child), trans. denied.
For the foregoing reasons, we reverse the trial court's judgment that the Children are CHINS.
Reversed.
SULLIVAN, J., and CRONE, J., concur.
NOTES
[1] The State also argues that any error was harmless because the evidence could have been excluded based upon relevancy under Ind. Evidence Rule 402, which provides that "[a]ll relevant evidence is admissible. . . ." and "[e]vidence which is not relevant is not admissible." We need not decide whether this evidence was relevant because any error in the exclusion was harmless.