## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 30 2019, 8:39 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Nathaniel S. Connor
Jordan Law, LLC
Richmond, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| J.C.,<br>*Appellant-Respondent,*<br><br>v.<br><br>R.C.,<br>*Appellee-Petitioner.* | July 30, 2019<br><br>Court of Appeals Case No.<br>19A-AD-521<br><br>Appeal from the Fayette Circuit Court<br><br>The Honorable Hubert Branstetter, Jr., Judge<br><br>Trial Court Cause No.<br>21C01-1810-AD-331 |

**Mathias, Judge.**

[1] J.C. ("Father") appeals the trial court's decree of adoption of his biological child, L.C. ("Child"), to R.C. ("Stepfather"). Father raises one issue on appeal, which we restate as whether the trial court violated Father's due process rights when it failed to advise Father of his right to counsel and his right to appointed

counsel should he be found indigent. Finding that Father's due process rights were violated, we reverse and remand.

## Facts and Procedural History

L.C. was born on September 22, 2010 to K.C. ("Mother") and Father. Mother began seeing Stepfather in 2013, and thereafter, Mother's relationship with Stepfather was off and on. On May 25, 2018, Mother married Stepfather after an extended break-up of seven to ten months. Stepfather has been providing care for L.C. as if he were the child's father since 2013. Even during the break-up with L.C.'s mother, Stepfather remained involved in L.C.'s life, calling her on the telephone and having her spend the night at his house on weekends.

On October 3, 2018, Stepfather filed a petition to adopt L.C., and a notice of adoption was issued to Father. Mother consented to the adoption. Stepfather asserted that the biological father's consent was not required pursuant to Ind. Code section 31-19-9-8(a)(2). On November 26, 2018, Father filed his objection to the adoption.[1] On January 3, 2019, the trial court held a hearing on Stepfather's petition. Stepfather appeared with counsel, and Father appeared pro se. At the hearing, Father was not advised of his right to counsel or appointed counsel if found indigent. Father testified at the hearing that he did not think it was a good idea to correspond or communicate with the child while incarcerated. Tr. p. 21. Father testified it was better for the child to not be

---

[1] Father testified that he himself did not write the objection. Rather, his girlfriend wrote the objection.

around him while he was in jail. *Id*. Father's last contact with L.C. was in August of 2017. At that time, Father was under the influence of illegal drugs, and Father testified that he has had problems with illegal drugs since 2015. *Id*. at 22.

[4] On January 9, 2019, counsel entered appearance on behalf of Father. By counsel, Father filed a motion to reopen evidence, an objection to the adoption, and a motion to enlarge time. The trial court denied Father's motion to reopen evidence but granted an enlargement of time to submit his proposed order. On January 28, 2019, Father filed his proposed findings of facts and conclusions of law. On January 29, 2019, the trial court found that the consent of Father was not needed in L.C.'s adoption and that it would be in L.C.'s best interests to be adopted by Stepfather. The trial court entered a decree of adoption, thereby terminating Father's parental rights to L.C. On January 31, 2019, Father filed his motion to reconsider the adoption decree. On February 8, 2019, the trial court denied the motion. Father now appeals.

## Discussion and Decision

[5] Initially, we observe that Stepfather failed to file an Appellee's brief, and we will not undertake the burden of developing arguments for him. *Jenkins v. Jenkins*, 17 N.E.3d 350, 351 (Ind. Ct. App. 2014). Instead, we apply a less stringent standard of review and will reverse upon a showing of prima facie error, which is error "at first sight, on first appearance, or on the face of it." *Orlich v. Orlich*, 859 N.E.2d 671, 673 (Ind. Ct. App. 2006). However, to

determine whether reversal is required, we are still obligated to correctly apply the law to the facts in the record. *Jenkins*, 17 N.E.3d at 352.

[6] Father argues that the trial court violated his due process rights when it failed to advise him of his right to counsel and his right to appointed counsel if he was found to be indigent. The dispositive question in this case is one related to the constitutionality of the trial court's judgment. We therefore review the trial court's decision de novo. *Goodson v. Carlson,* 888 N.E.2d 217, 220 (Ind. Ct. App. 2008) (reviewing de novo questions of due process).

[7] The Fourteenth Amendment of the United States Constitution provides, "No State shall ... deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1. With regard to the due process rights of parents facing the possible termination of their parental rights, our supreme court has stated:

> It is well established that the involuntary termination of parental rights is an extreme measure that is designed to be used as a last resort when all other reasonable efforts have failed. Choices about marriage, family life, and the upbringing of children are among associational rights the United States Supreme Court has ranked as of basic importance in our society and are rights sheltered by the Fourteenth Amendment against the State's unwarranted usurpation, disregard, or disrespect. "If any freedom not specifically mentioned in the Bill of Rights enjoys a 'preferred position' in the law it is most certainly the family."

> "The Due Process Clause of the U.S. Constitution and the Due Course of Law Clause of the Indiana Constitution prohibit state action that deprives a person of life, liberty, or property without a

fair proceeding." Parental rights constitute an important interest warranting deference and protection, and a termination of that interest is a "unique kind of deprivation." However, children have an interest in terminating parental rights that prevent adoption and inhibit establishing secure, stable, long-term, continuous relationships. When the State seeks to terminate the parent-child relationship, it must do so in a manner that meets the requirements of due process.

*In re C.G.,* 954 N.E.2d 910, 916–17 (Ind. 2011) (internal citations omitted).

[8]     Here, Father argues that the trial court violated his due process rights by not advising him of his right to counsel or appointed counsel to represent him in Stepfather's adoption proceeding. We agree. Ind. Code section 31-32-2-5 provides that "[a] parent is entitled to representation by counsel in proceedings to terminate the parent-child relationship." And this court had held that a party's right to counsel, afforded by Indiana Code section 31-32-2-5, also applies in adoption proceedings where, as here, the petitioner seeks to adopt the child over the objection of one of the natural parents. See *Taylor v. Scott*, 570 N.E.2d 1333 (Ind. Ct. App. 1991), *trans. denied*. "Thus, parents whose parental rights will be terminated in an adoption proceeding have three rights: (1) the right to be represented by counsel; (2) the right to have counsel provided if [they] could not afford private representation; and (3) the right to be informed of the two preceding rights." *Matter of Adoption of C.J.*, 71 N.E.3d 436, 443 (Ind. Ct. App. 2017) (internal quotations omitted) (citing *In re Adoption of G.W.B.*, 776 N.E.2d 952, 954 (Ind. Ct. App. 2002)) (quoting, *Taylor*, 570 N.E.2d at 1335). It is clear, then, that Father was entitled to representation by counsel in the

adoption proceeding. There is nothing in the record before us that shows that the trial court advised Father of his right to counsel or inquired into Father's ability to retain counsel.

## Conclusion

[9] We conclude that the trial court committed reversible error by failing to advise Father of his right to counsel and his right to appointed counsel should he be found indigent. We reverse and remand for the trial court to determine whether Father is indigent and, if so, to appoint counsel to represent him at a new adoption hearing.

May, J., and Brown, J., concur.