# FOR PUBLICATION



FILED
Oct 27 2014, 6:00 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**M.W.**
Lexington, Kentucky

ATTORNEY FOR APPELLEE:

**REBECCA L. LOCKARD**
Jeffersonville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

|  |  |  |
|---|---|---|
| IN RE THE ADOPTION OF K.W.: | ) | |
| | ) | |
| M.W. | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | No. 10A04-1309-AD-469 |
| vs. | ) | |
| | ) | |
| S.L. and T.L. | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE CLARK COUNTY CIRCUIT COURT
The Honorable Vicki L. Carmichael, Judge
Cause No. 10C04-1303-AD-13

**October 27, 2014**

**OPINION – FOR PUBLICATION**

**MATHIAS, Judge**

M.W. ("Father") raises two issues on appeal. We address the dispositive issue, which we restate as whether the trial court violated Father's due process rights when it failed to rule on his request for appointed counsel. Finding that Father's due process rights were violated, we reverse and remand.

**Facts and Procedural History**

K.W. was born on July 31, 2004 to A.W. ("Mother") and Father. In the spring of 2008, Mother became ill with Crohn's disease. Dissatisfied with her treatment by physicians, Father, an emergency medical technician, began stealing IV supplies, fluids, and medications to give to Mother. On March 26, 2009, Mother died after Father injected her with a lethal dose of pain medication. Father was arrested on September 30, 2009. Six days after Father's arrest, on October 5, 2009, S.L., K.W.'s maternal grandmother ("Grandmother") received guardianship of K.W. On February 26, 2010, Father pleaded guilty in Jefferson County, Kentucky to Class D felony reckless homicide, Class D felony practicing medicine without a license, Class D felony theft by unlawful taking, and Class D felony theft of a legend drug. Father was ordered to serve a twelve-year sentence in the Kentucky Department of Correction.

On March 25, 2013, Grandmother and her husband, K.W.'s step-grandfather, (collectively "Grandparents") filed a petition to adopt K.W.[1] and a notice of adoption was issued to Father. On April 15, 2013, Father filed a pro se appearance. On the same day, he also filed a request that the trial court appoint counsel for him, alleging that he was

---

[1] Grandparents filed an amended petition on June 3, 2013.

indigent and that he had sought counsel without success. The trial court did not rule on Father's request for appointment of counsel.[2]

The trial court held a hearing on Grandparents' petition on July 30, 2013. Grandparents appeared with counsel and Father appeared pro se and telephonically. On September 4, 2013, the trial court found that the consent of Father was not needed in K.W.'s adoption and that it would be in K.W.'s best interests to be adopted by Grandparents. The trial court entered a decree of adoption, thereby terminating Father's parental rights to K.W.

Father now appeals.

## Discussion and Decision

Father argues that the trial court violated his due process rights when it failed to rule on his request for appointed counsel. The dispositive question in this case is one related to the constitutionality of the trial court's judgment. We therefore review the trial court's decision *de novo*. Goodson v. Carlson, 888 N.E.2d 217, 220 (Ind. Ct. App. 2008) (reviewing *de novo* questions of due process).

The Fourteenth Amendment of the United States Constitution provides, "No State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 1. With regard to the due process rights of parents facing the possible termination of their parental rights, our supreme court has stated:

---

[2] The record is unclear as to why the trial court failed to rule on Father's request for appointed counsel. The Appellees, however, appear to suggest in their brief that the trial court did not rule on the motion because Father failed to include an order with his request and failed to request a hearing.

3

It is well established that the involuntary termination of parental rights is an extreme measure that is designed to be used as a last resort when all other reasonable efforts have failed. Choices about marriage, family life, and the upbringing of children are among associational rights the United States Supreme Court has ranked as of basic importance in our society and are rights sheltered by the Fourteenth Amendment against the State's unwarranted usurpation, disregard, or disrespect. "If any freedom not specifically mentioned in the Bill of Rights enjoys a 'preferred position' in the law it is most certainly the family."

"The Due Process Clause of the U.S. Constitution and the Due Course of Law Clause of the Indiana Constitution prohibit state action that deprives a person of life, liberty, or property without a fair proceeding." Parental rights constitute an important interest warranting deference and protection, and a termination of that interest is a "unique kind of deprivation." However, children have an interest in terminating parental rights that prevent adoption and inhibit establishing secure, stable, long-term, continuous relationships. When the State seeks to terminate the parent-child relationship, it must do so in a manner that meets the requirements of due process.

In re C.G., 954 N.E.2d 910, 916-17 (Ind. 2011) (internal citations omitted).

Here, Father argues that the trial court violated his due process rights by ignoring his request for appointed counsel to represent him in Grandparents' adoption proceeding. We agree. Indiana Code section 31-32-2-5 provides that "[a] parent is entitled to representation by counsel in proceedings to terminate the parent-child relationship." And this court had held that a party's right to counsel, afforded by section 31-32-2-5, also applies in adoption proceedings where, as here, the petitioners seek to adopt the child over the objections of one or both of the natural parents. See Taylor v. Scott, 570 N.E.2d 1333 (Ind. Ct. App. 1991). It is clear, then, that Father was entitled to representation by counsel in the adoption proceeding.

4

Grandparents appear to argue that Father waived his right to counsel when he filed a pro se appearance, filed other documents with the court, and failed to request a hearing on his motion or request counsel at the adoption proceeding. We disagree. In In re G.P., 4 N.E.3d 1158 (Ind. 2014), the biological mother, J.A., waived her right to counsel at an initial Child in Need of Services ("CHINS") hearing. She then requested counsel at a subsequent review hearing. The trial court found her to be indigent and entitled to appointed counsel, but did not appoint counsel. After the CHINS hearings, the Department of Child Services ("DCS") filed an action to involuntarily terminate J.A.'s parental rights. The trial court appointed counsel to represent her during the termination of parental rights proceedings. J.A.'s parental rights were terminated and she appealed, arguing that the trial court had violated her due process rights by failing to appoint counsel for the CHINS proceedings after finding that she was indigent and entitled to counsel. Our supreme court agreed with J.A. and vacated the trial court's judgment terminating J.A.'s parental rights. It noted:

> Reading the juvenile statutes collectively, Section 31-32-4-1 provides that parents in TPR proceedings are entitled to be represented by counsel, along with "[a]ny other person designated by law." And one such person "designated by law"—designated by Section 31-34-4-6 specifically—is the indigent parent who requests a court-appointed attorney in a CHINS proceeding and is found by the trial court to be indigent. To the extent the trial court "may" appoint counsel to represent a parent in another proceeding, it would be pursuant to Section 31-32-4-3. It does *not* have discretion in a circumstance falling under Section 31-34-4-6.

Id. at 1163 (emphasis in original).

Importantly for this case, the supreme court rejected DCS's argument that J.A. waived her right to appointed counsel by failing to bring to the trial court's attention at

5

subsequent hearings that it had not appointed counsel and by failing to make another request for counsel after the trial court did not act on her first request:

> [W]e have never held that a litigant who elects to waive the right to counsel is permanently bound by that decision—and here J.A. changed her mind as to this course of action at the very next hearing, requested an attorney, and was told by the court that she would have one appointed to represent her. Nor have we ever held that a litigant who has been told that they would receive appointed counsel must continually re-request said counsel at each and every hearing where an attorney is not provided to her. The very fact that this notion might occur to lawyers and judges looking at her case, but not occur to J.A. at her hearings, is at least somewhat indicative of why she needed the lawyer in the first place.

Id. at 1165.

The reasoning employed by our supreme court in In re G.P. also applies in this case, where the direct result of the adoption hearing was the involuntary termination of Father's parental rights to K.W. Indiana Code section 31-32-2-5 provides that a parent is *entitled* to representation in a termination of parental rights proceeding and this court has held that the same rule applies in adoption proceedings where the adoption would result in the involuntary termination of parental rights of one or both of the natural parents. See Taylor v. Scott, 570 N.E.2d 1333 (Ind. Ct. App. 1991). Father was entitled to be represented by counsel, and he did not waive that right by filing his pro se appearance or failing to repeat his request for appointed counsel.

In light of Father's undisputed allegations in his motion for the appointment of counsel that he was incarcerated, could not afford to hire counsel, had tried without success to secure counsel, and earned twelve to twenty dollars per month while in prison, there is a clear possibility that Father is indigent. Indeed, after Father filed his notice of

6

appeal, the Clark County court reporter notified Father by letter that he had been "deemed a pauper" and that no fee was due from him for preparation of the hearing transcript. Appellant's App. p. 27. We therefore conclude that the trial court erred by failing to rule on his request for appointed counsel. We reverse and remand for the trial court to determine whether Father is indigent and, if so, to appoint counsel to represent him at a new adoption hearing.

Reversed and remanded.

RILEY, J., and CRONE, J., concur.