Robert MAYBAUM & Susan Maybaum, Appellants–Respondents,

v.

PUTNAM COUNTY OFFICE OF FAMILY & CHILDREN, Appellee–Petitioner.

No. 67A01–9906–JV–223.

Court of Appeals of Indiana.

Feb. 18, 2000.

---

**952**

James H. Holder, Jr., Bainbridge, Indiana, Attorney for Appellant.

Paul J. Watts, Pete S. Raventos, Watts Law Office, P.C., Spencer, Indiana, Attorneys for Appellee.

## OPINION

GARRARD, Senior Judge.

Appellants Susan and Robert Maybaum (Maybaums) appeal the trial court's order, adjudicating their daughter a Child In Need of Services (CHINS). The Maybaums allege that the Putnam County Of-

fice of Family & Children (OFC) did not provide sufficient evidence to prove the allegations contained within the CHINS petition.

We reverse.

### Facts and Procedural History

P.M. is the adopted daughter of Robert and Susan Maybaum. On November 6, 1998, the OFC received a report that P.M. had been sexually abused. During an interview, P.M. identified her father as the perpetrator. As a result, the OFC obtained an emergency detention order and P.M. was placed in foster care.

On November 10, 1998, the OFC filed a petition, alleging that P.M. was a CHINS under Ind.Code § 31–34–1–3 because she was a victim of a sex offense. Record at 8. Specifically, the OFC alleged that Robert had forced P.M. to perform oral sex on him at the family residence. Because the Maybaums denied the allegations, the trial court scheduled a factfinding hearing.[1]

Prior to the hearing, P.M. was examined by a physician who concluded that P.M.'s "genital examination revealed clear evidence of penetrating injury." Record at 86. That report was subsequently admitted during the OFC's case-in-chief through the testimony of Linda Airhart, the OFC's family case manager who investigated the allegations of abuse. Record at 214–15. However, on cross-examination Airhart conceded that the medical report did not identify Robert as the perpetrator. Airhart further stated that P.M. had admitted that she had been "sexual[ly] acting out with other children." Record at 220.

P.M. was also called to testify for the OFC. However, her testimony was riddled with equivocal statements. For example, although P.M. testified on direct examination that her father forced her to perform oral sex on him, on cross-examination she stated that she was "very upset with [her] parents for making [her] follow

1. I.C. § 31–34–11–1 ("Unless the allegations of a petition have been admitted, the juvenile court shall hold a factfinding hearing.").

the rules at home" and do chores, and preventing her from seeing her friends. Record at 236. P.M. further testified that if the "discipline problems in [her] home were relaxed or better, [her] story in regards to molestation would change." Record at 240–41. On redirect examination, P.M. stated that she did not know what the word molestation meant and further stated that when she said that she might change her story, she was not talking about changing her story about her father's alleged acts. Record at 242. However, once defense counsel again questioned P.M., she stated that she "knew what molestation meant." Record at 245.

After the OFC rested, Robert presented several witnesses on his behalf, including his family physician, Dr. William Pruett who testified that in October of 1997 Robert saw him because of an alleged problem with impotency. Record at 249. The Maybaums' daughter, A.M., testified that she believed P.M. had concocted the story about her father because she did not like to follow the rules in her home and P.M. did not want to get in trouble for allegedly touching A.M.'s private parts. Record at 284–85. Robert also testified, claiming that he had been impotent since 1989. Record at 271. He also denied that he had touched P.M. in any manner. Record at 273. Robert's wife, Susan, also testified and confirmed Robert's testimony by testifying that she believed Robert was impotent. Record at 279.

Following the hearing, the trial court entered findings of fact and conclusions of law, adjudicating P.M. a CHINS. In its findings, the trial court found that P.M. "ha[d] been a victim of molestation" a "genital examination revealed 'clear evidence of penetrating injury'" and that "[e]vidence would indicate incidents of sexual activity and abuse over the last six years, with the mother testifying to incidents of masturbation and sexual exploration and contact with siblings." Record at 80. The trial court concluded, however, that there was insufficient evidence to find that Robert had molested P.M. as the OFC had alleged under I.C. § 31–34–1–3. Nonetheless, the trial court concluded that because Robert has a legal responsibility to care for P.M. and "by either act or omission failed to protect [P.M.] from injury," P.M. was a CHINS under IND.CODE § 31–34–1–2. Record at 81.

**Discussion and Decision**

■ The Maybaums contend that the juvenile court improperly based its decision that P.M. was a CHINS upon a set of facts which were not set forth in the CHINS petition. In particular, the Maybaums contend that because the petition alleged that P.M. was a victim of a sex offense at the hands of her father, the OFC was required to prove those specific allegations. Consequently, the Maybaums contend that because the trial court's conclusion was based upon Robert's failure to protect P.M. from injury, the court's order is not valid and binding.

In response, the OFC concedes that its petition alleged that P.M. was the victim of a sex offense under I.C. § 31–34–1–3 and, in particular, that P.M. had been molested by her father. However, the OFC contends that because the trial court in its findings of fact found that P.M. had been molested, albeit by someone other than her father, it satisfied the statutory provision cited in its petition.

The OFC's response misses the mark. While we agree that the trial court found that P.M. had been molested, it did not base its ultimate determination, that P.M. was a CHINS, upon I.C. § 31–34–1–3. Instead, the trial court elected to base its determination on I.C. § 31–34–1–2 which supports a CHINS adjudication if the "child's physical or mental health is seriously endangered due to injury by the act or omission of the child's parent, guardian, or custodian." In particular, the trial court found that Robert had a legal responsibility for the care, custody and control of his child and by either act or omission failed to protect P.M. from injury. Although from the juvenile court's findings

we can deduce that the injury from which Robert failed to protect P.M. was the "penetrating injury" revealed in the medical exam, the fact remains that the trial court ultimately based its CHINS adjudication upon a statutory provision and set of facts which were not included in the CHINS petition.

In order to determine whether such a deviation was allowable, we examine the provisions under the CHINS statute. According to Article 34, entitled "Juvenile Law: Children In Need of Services," and in particular, Chapter 1, there are several circumstances and corresponding sections under which a child may be adjudicated a CHINS. *See* I.C. §§ 31–34–1–1 to –11. Consequently, Section 3 of Chapter 9 states that a CHINS petition *"must"* contain "[a] citation to the provision of the juvenile law that defines a child in need of services" and a "concise statement of the facts upon which the allegations are based, including the date and location at which the alleged facts occurred." I.C. § 31–34–9–3(4)(B), (C) (emphasis added). Further, before the juvenile court holds the mandatory initial hearing on the CHINS petition, a "summons shall be issued [under Ind. Trial Rule 4] for the ..." "child," the "child's parent, guardian, custodian, or guardian ad litem," and "[a]ny other person necessary for the proceedings." I.C. § 31–34–10–2(a), (b). A copy of the petition "must accompany each summons." I.C. § 31–34–10–2(c).

Presumably, these provisions were enacted to give the child's parent, guardian or custodian notice of the allegations and the opportunity to contradict the OFC's case. *See* Ind.Code § 31–32–2–3 (stating that in CHINS proceedings a parent is entitled to cross-examine witnesses, obtain witnesses or tangible evidence by compulsory process and to introduce evidence on his behalf). *See also* I.C. § 31–34–9–7 (stating that a child's parents are parties

to the proceedings described in the juvenile law and have all rights of parties under the Indiana Trial Rules). Therefore, the CHINS petition is an integral part of ensuring that the parents have notice of the allegations and an opportunity to contradict the OFC's evidence. This is, in part, so because we have long recognized that parental rights have constitutional dimension. *See, e.g., Matter of Paternity of Baby Girl,* 661 N.E.2d 873, 877 (Ind.Ct.App.1996) (recognizing that the right to raise a child is an "essential and basic right").

■ However, any concerns with notice are addressed if the parties expressly or impliedly consented to trial of the unpleaded issue under Indiana Trial Rule 15(B). T.R. 15(B), which is applicable to CHINS proceedings,[2] provides that if "issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." The purpose of subdivision (B) is to promote relief for a party based upon the evidence actually introduced at trial, notwithstanding the allegations set forth in the pleadings. *Curtis v. Clem,* 689 N.E.2d 1261, 1264 (Ind.Ct.App.1997). Notice may be express if raised prior to or during trial, or implied, if the evidence presented at trial places a reasonably competent attorney on notice that the issue was before the court. *K Mart Corporation v. Brzezinski,* 540 N.E.2d 1276, 1281 (Ind.Ct.App.1989), *reh'g denied, trans. denied.*

■ Our review of the record reveals that at no time did the OFC expressly inform the Maybaums or the court that it intended to deviate from the petition to show that P.M. was a CHINS because P.M.'s physical or mental health was seriously endangered due to an injury caused by Robert's act or omission. Thus, the trial court's deviation was proper only if

---

**2.** *See* I.C. § 31–32–1–3 (noting that the "Indiana Rules of Trial Procedure apply in all

matters not covered by the juvenile law").

the parties impliedly consented to the trial of Robert's failure to protect P.M. We cannot find that consent occurred in this case.

■ Implied consent will not be found if the parties did not know or could not have known that the unpleaded issue was being litigated. *Id.* Thus, evidence which is relevant, not only to the unpleaded issue but also to the issue set forth in the pleadings, will not necessary notify a party that an unpleaded issue is being tried. *Id.*

Here, the OFC did not present any specific evidence which would have placed the Maybaums' attorney on notice that it was attempting to show that one of P.M.'s siblings or another person, not P.M.'s father, caused P.M.'s penetrating injury. The OFC presented only two witnesses, Linda Airhart and P.M., to support its case. At no time during P.M.'s testimony did the OFC question P.M. about anyone other than her father. During Airhart's testimony, the OFC again concentrated on the allegations P.M. made to Airhart about her father during the course of Airhart's investigation. Although at one point when the OFC asked whether there were "any other allegations" which were made by P.M., Airhart responded that P.M. informed her that there were "allegations of sexual acting out between the children," and that P.M. allegedly admitted that there had been "some acting out with [J.P.M., her brother,]" Airhart did not further comment about the specific acts, other than to say that there was an "open investigation involving the other kids." Record at 216. Even in its closing, the OFC opined that P.M. was telling the truth when she stated that her father had molested her. Record at 290.

Additionally, defense counsel's decision to raise some questions concerning P.M.'s possible sexual acts with siblings and sexual aggressiveness did not show that the defense impliedly consented to trial of P.M.'s molestation by another. Dr. Pruett, who was called to testify concerning Robert's alleged impotency, referred to a visit with P.M. in June of 1997. During that visit, P.M. allegedly informed Dr. Pruett that six months prior to the visit she and her brother J.P.M. had removed their pants after which P.M. touched J.P.M.'s private parts. Although Dr. Pruett stated that he found P.M.'s story incredible, he further testified that Susan, P.M.'s mother, and P.M.'s older sister who had accompanied P.M. to the doctor's office, seemed to indicate that P.M.'s story was true because they had "caught [P.M.] in several sexually aggressive acts and had caught [P.M.] doing fellatio on [J.P.M.]." Record at 253. Despite defense counsel's decision to bring this testimony before the court, it appears that counsel's purpose was to prove that P.M. was a sexually aggressive child and, therefore, someone other than the father, including P.M., might have caused the "penetrating injury."[3] Therefore, this testimony cannot be considered "special evidence" which was not relevant to the issues already before the court. Consequently, we conclude that neither party consented to litigate an issue concerning an act of molestation by any person other than the father.

We do not disagree that a child may be adjudicated a CHINS if a parent fails to prevent abusive treatment by one child against another. *See Matter of E.M.,* 581 N.E.2d 948, 955 (Ind.Ct.App.1991), *trans. denied.* Upon further investigation and hearing, the OFC may very well be able to establish the parents have failed to protect P.M. from an injury inflicted upon her by a sibling or another person. In fact, the *medical report, which shows evidence of "penetrating injury," lends credence to that conclusion. However, the fact remains that the OFC did not attempt to prove that anyone other than P.M.'s father molested her. Even in its findings of fact,*

---

**3.** We recognize that the juvenile court, in its findings of fact, found that P.M. was the victim of molestation. Therefore, the court must have concluded that someone other than P.M. or P.M.'s father caused the "penetrating injury." However, defense counsel could have legitimately attempted to show that P.M., as a sexually aggressive child, injured herself.

the juvenile court did not name who allegedly molested P.M. Rather, the court found only that P.M. "has been a victim of molestation." Record at 80. Under these circumstances, the Maybaums' attorney could not have been aware that the OFC was proceeding under a different section of the CHINS statute. Even the Maybaums' attorney's closing statement suggests that after all of the evidence was presented, he was still under the belief that the only allegation against his client was that Robert allegedly molested P.M.[4] Record at 289.

While we certainly understand the trial court's sincere desire to obtain what might eventually prove to be much-needed services for P.M., to permit the trial court to base its decision upon a theory not set forth by the OFC would contravene the purpose of the CHINS statutes, which specifically require the OFC to provide a citation to the precise section of the CHINS statute and the specific facts underlying the allegation. Further, when parents do not receive notice of the specific allegations against them, they do not know what evidence to present on their behalf, which evidence or witnesses to obtain by compulsory process, or which questions to ask during cross-examination, rights explicitly granted under the CHINS statute. As aptly noted by this court in *Elkhart County Farm Bureau Cooperative Ass'n, Inc. v. Hochstetler,* 418 N.E.2d 280, 283 (Ind.Ct. App.1981), *reh'g denied:*

> This broad ability to amend the pleadings to conform to the evidence is, however, not without its limitations.... [T]he purpose behind the rule is to allow the parties some flexibility in litigating the case, and to further justice by allowing the evidence brought forth at trial (to) determine the parties liability. The basic text of fairness would indicate that a "party is entitled to some notice that an issue is before the court which has not been pleaded or has not been agreed to in a pre-trial order."... "This is

especially true where the new issue is not unequivocally clear by the evidence being submitted. This is not being technical. This is being fair. A party should be given the opportunity to meet the issues which the court is considering."(citations omitted).

(quoting *Bahre v. Metropolitan School District of Washington Township,* 400 N.E.2d 197, 200 (Ind.Ct.App.1980)). In this case, the Maybaums were entitled to notice that they were required to defend against a claim that they had failed to protect the child. And they were entitled to specifics concerning the acts and circumstances which they assertedly failed to protect against. Then, if they had a defense, they might be prepared to present it. Because we conclude that the Maybaums could not have known that the OFC was proceeding under a different section of the CHINS statute, we need not reach the Maybaums' contention regarding the sufficiency of the evidence.

Judgment reversed

FRIEDLANDER, J., and DARDEN, J., concur.

---

4. Specifically, defense counsel stated that "Mr. Maybaum, did not molest this child and there's not sufficient evidence to find that he did." Record at 289.