## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 29 2017, 10:23 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Noah T. Williams
Monroe County Public
Defender's Office
Bloomington, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

James D. Boyer
Robert J. Henke
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re A.J., a Child Alleged to Be in Need of Services,

J.J. (Father)

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner.*

June 29, 2017

Court of Appeals Case No.
53A01-1701-JC-29

Appeal from the Monroe Circuit Court

The Honorable Stephen R. Galvin, Judge

Trial Court Cause No.
53C07-1603-JC-185

**Mathias, Judge.**

[1] J.J. ("Father") appeals the order of the Monroe Circuit Court finding that his minor son, A.J., is a child in need of services ("CHINS"). On appeal, Father claims that the trial court erred in determining that A.J. was a CHINS based solely on the fact that another child in the household suffered from non-accidental injuries. Concluding that the State failed to present any evidence that A.J.'s physical or mental condition was seriously impaired or endangered as a result of Father's inability, refusal, or neglect to supply A.J. with necessary food, clothing, shelter, medical care, treatment, or rehabilitation, we are obliged to reverse.

## Facts and Procedural History

[2] Father and Am.J. ("Mother") are A.J.'s parents. At the time relevant to this appeal, A.J. was eleven years old. A.J. lived with Father and Father's girlfriend J.L., who had two minor children from previous relationships, A.B., who was seven years old, and Je.L., who was four years old.

[3] On March 22, 2016, the Indiana Department of Child Services ("DCS") received a report that seven-year-old A.B. had been the subject of physical abuse based on bruises on his body. DCS case manager Stephanie Clephane ("Clephane") spoke with A.B., Je.L., and A.J. Clephane also observed bruises on A.B.'s body. Clephane arranged for A.B. to be examined by a physician. Clephane also interviewed Father and J.L., both of whom claimed that A.B. was injured by falling in the bathtub or could have been bruised while roughhousing with his younger brother Je.L.

Dr. Richard Malone ("Dr. Malone"), a pediatrician, examined A.B. and observed multiple bruises in a variety of locations on A.B.'s body, which were inconsistent with typical childhood injuries. Dr. Malone concluded that the bruises were not the result of accidents. A.B. was hospitalized overnight so that he could be observed. A.B. was then taken to a child advocacy center, where he was interviewed. On March 24, 2016, all three children were removed from Father and J.L.'s home. After his removal, A.B. suffered from no more bruising.

On March 29, 2016, DCS sought authorization from the trial court to file a petition alleging that the children removed from the home, including A.J., were in need of services. The trial court authorized the petition that same day, and DCS filed a petition alleging that the children were in need of services. Specifically, DCS alleged that A.J. was a CHINS "as defined in Ind. Code 31-34-1":

> a. Statutory Citation: The child is under eighteen (18) years of age and the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with the necessary food, clothing, shelter, medical care, education, or supervision; AND the child needs care, treatment, or rehabilitation that he is not receiving and is unlikely to be provided or accepted without coercive intervention of the court.

b.  Factual Allegations:

   i.  [A.J.] lives with [Father] and his father's live in girlfriend, [J.L.] Also in the home are [A.J.]'s half siblings [A.B.] and [Je.L.][1]

   ii.  On or about March 23, 2016, [A.B.] was observed to have multiple bruising on his body, including but not limited to bruises on his back, thighs, hip, ear, temple, and face.

   iii.  [Je.L.] was observed to have bruising on his back.

   iv.  Pediatrician Dr. Malone stated that the bruising on [A.B.] was caused by non-accidental trauma.

   v.  Neither [Father] nor his live in girlfriend [J.L.], could provide an adequate explanation for [A.B.] or [Je.L.]'s injuries.

   vi.  [Father] refused to speak to DCS regarding the allegations of physical abuse.

   vii.  [Father] has prior DCS history of neglect in May 2012.

   viii.  [Mother] is the custodial parent [of A.J.][2]

   ix.  Due to the unexplained physical injuries to the younger children in the home, [A.J.]'s safety cannot be ensured in the care of his father.

---

[1] Although DCS alleged that A.B. and Je.L. were A.J.'s half-siblings, A.J. is biologically and legally unrelated to them. A.B. and Je.L., however, are half-siblings.

[2] Although DCS believed that Mother was A.J.'s legal custodian, it was later established that, regardless of who was the legal custodian, A.J. had lived with Father as his physical custodian most of his life.

Appellant's App. pp. 6-7. The petition also noted that A.J. had been placed with his Mother.[3]

[6] The trial court conducted three fact-finding hearings on September 12, September 27, and October 3, 2016. At these hearings, DCS presented the testimony of Dr. Malone and Clephane. The evidence focused on the unexplained, non-accidental nature of the injuries to A.B. Clephane testified that, in her opinion, A.J. was a CHINS because of the apparent abuse to which A.B. was subject and because he stated that he was "afraid for" and "worries" about A.B. and Je.L. Tr. pp. 82, 84. However, Clephane admitted that A.J. also stated that he did not fear for his own safety and never stated that he was afraid of Father. Clephane also admitted that Father had provided adequate food, shelter, and care for A.J. She explained that she was "concerned" about adequate supervision, but agreed that there was nothing about A.J. that indicated that he was not adequately supervised. Instead, A.J. had told her that "he plays video games most of the time." Tr. p. 84. Clephane further testified that A.J. "also has previous child welfare experience where his parents have been using drugs and child welfare has been involved before, so I think that adds to his need of being a child in need of services." *Id.* at 83.

---

[3] DCS initially placed A.J. in Mother's care, but A.J. was removed from Mother's care and placed in the custody of his maternal aunt after Mother tested positive for drug use and was arrested on a probation violation.

[7]     In its closing argument, DCS relied on Indiana Code section 31-34-12-4 and the "rebuttable presumption that a child is in need of services" under this section.[4] *Id.* at 88. Father argued that DCS had presented no evidence that A.J. had been harmed in any way, other than his statement that he was worried or concerned about A.B. and Je.L. Father also argued that DCS never explained precisely what worried A.J. and further argued that there was no evidence that A.J. was concerned for his own safety.

[8]     The trial court issued an order on October 3, 2016, finding that A.J. was a CHINS. The trial court's order provided in relevant part:

<u>Findings</u>

The Court, being duly advised, now finds that the children are Children in Need of Services as alleged in the Petition and as defined by IC 31-34-1. In support of this conclusion of law, the following findings are entered:

1.   [J.L.] is the mother of [A.B.] . . . and [Je.L.] . . . . [J.B.] is the father of [A.B.]. [J.P.] is the father of [Je.L.]. [Mother] and [Father] are the parents of [A.J.]. In March, 2016, [A.B.], [Je.L.], and [A.J.] were living in the home of [Father] and [J.L.]

2.   On March 23, 2016, [A.B.] was seen by Dr. Richard Malone, a local pediatrician experienced in recognizing child abuse. [A.B.] had suffered large, impressive bruising not encountered in normal childhood play. As noted by Dr. Malone, and as evident from the photographs, [A.B.] had facial bruises and a bruise over the ear, a large bruise on the upper chest and over the right collar bone, extensive

---

[4] We address DCS's misplaced reliance on this section *infra*.

bruising of the left and right superior iliac spine, bruising on the abdomen, and bruising on both upper thighs.

3. [A.B.] has no bleeding or clotting disorder that would account from the bruises.

4. The bruises are not consistent with typical childhood injuries. Dr. Malone testified that the injuries are non-accidental and are the result of inflicted trauma. A fall in the bathtub could not cause these bruises unless [A.B.] fell "over, and over, and over again." [A.B.] could not have inflicted these bruises on himself. A younger sibling could not have caused the bruising. The Court accepts Dr. Malone's testimony as accurate in all respects.

5. After learning of the bruising to [A.B.], [J.L.] refused to take him to the doctor to be examined. When asked how the bruising occurred, [J.L.] stated that [A.B.] fell in the bathtub. [Father] also stated said [A.B.] fell in the bathtub. Both said that they heard a "crash" in the bathroom. [Father] stated that he then went back to watching TV. After Dr. Malone told her that he did not believe that the injuries were accidental, [J.L.] stated that 4-year-old [Je.L.] had hit [A.B.], causing the bruising. The Court specifically finds that [the] statements by [J.L.] and [Father] are not true.

6. [Mother] screened positive for tramadol on July 6, 2016. She admitted to using tramadol without a prescription. She also screened positive for tramadol on July 12, August 1, and August 4, 2016. She screened positive for buprenorphine on July 19, 2016. She was arrested for violating her probation on August 11, 2016. She is currently incarcerated and is not available to care for her child.

7. [J.B.] is the non-custodial parent of [A.B.] If [A.B.] is not found to be a Child in Need of Services, he will be returned to his mother [J.L.]'s care. This is not in the child's best interests.

8. [J.P.] is the non-custodial parent of [Je.L.]. If [Je.L.] is not found to be a Child in Need of Services, he will be returned

to his mother [J.L.]'s care. This is not in the child's best interests.

9. [A.B.] is the victim of inflicted trauma by a third party. [A.B.] was in the care of [J.L.] and [Father] when the injuries occurred. [J.L.] and [Father] have both made false statements concerning how the injuries occurred. The coercive intervention of the court is clearly necessary to protect him.

Appellant's App. pp. 57-59.

[9] The trial court held a dispositional hearing on December 1, 2016, at which DCS case worker Bonnie Forbey ("Forbey") testified. Forbey admitted under cross-examination that she was not aware of A.J. ever having any unexplained injuries while in Father's care. She was also unaware of any time when A.J. lacked food, shelter, care, or supervision while in Father's care. Father repeated his argument that the injuries to A.B. were insufficient to establish that A.J. was a CHINS. The trial court found that A.J. was still a CHINS at the time of the dispositional hearing and issued a dispositional decree granting wardship of A.J. to DCS.

[10] The dispositional order provided in relevant part, "The needs of the child for care, treatment, or rehabilitation are: The child requires a safe and stable home, free from violence in the child's home." Appellant's App. p. 94. The dispositional order repeats the trial court's findings in the CHINS order regarding Mother's substance abuse, and further provided that A.J. was to remain in his current placement, with wardship awarded to DCS. Father now appeals.

## Applicable Law and Standard of Review

[11]     As set forth by our supreme court in *In re N.E.*, 919 N.E.2d 102, 105 (Ind. 2010), Indiana Code sections 31-34-1-1 through 11 specify the elements that DCS must prove in order to establish that a child is in need of services: (1) the child is under the age of 18; (2) one or more particular set or sets of circumstances set forth in the statute exists; and (3) the care, treatment, or rehabilitation needed to address those circumstances is unlikely to be provided or accepted without the coercive intervention of the court.

[12]     Here, DCS alleged that A.J. was in need of services under Indiana Code section 31-34-1-1, which requires DCS to prove that "the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision[.]" This statute has been referred to as the "neglect statute." *In re Ju.L.*, 952 N.E.2d 771, 777 n.4 (Ind. Ct. App. 2011).

[13]     The purpose of a CHINS adjudication is to protect children, not punish parents. *In re L.C.*, 23 N.E.3d 37, 39 (Ind. Ct. App. 2015) (citing *N.E.*, 919 N.E.2d at 106), *trans. denied*. A CHINS adjudication is not a determination of parental fault but rather is simply a determination that a child is in need of services and is unlikely to receive those services without the court's intervention. *Id.* (citing *N.E.*, 919 N.E.2d at 105). Because CHINS proceedings are civil in nature, DCS

must prove by a preponderance of the evidence that a child is a CHINS as defined by the relevant statutes. *Id.*

[14] On appeal, we neither reweigh the evidence nor judge the credibility of the witnesses. *Id*. Instead, we consider only the evidence that supports the juvenile court's decision and reasonable inferences drawn therefrom. *Id*. at 40. We reverse only upon a showing that the decision of the juvenile court was clearly erroneous. *Id*.

## Discussion and Decision

[15] Father argues that DCS failed to prove by a preponderance of the evidence that his son A.J. was in need of services as alleged by DCS. He notes that DCS alleged that A.J. was a CHINS under Indiana Code section 31-34-1-1, the "neglect statute." Thus, DCS was required to prove that A.J.'s physical or mental condition was seriously impaired or endangered *as a result* of the inability, refusal, or neglect of A.J.'s parent, guardian, or custodian to supply him with necessary food, clothing, shelter, medical care, education, or supervision. *Id* (emphasis added).

[16] Father does not challenge the trial court's factual findings regarding the nature of the injuries to A.B., but he notes that there was no evidence that A.J. had ever been injured or otherwise abused while in his custody. Nor was there any evidence that A.J. was even concerned for his own safety. He therefore argues that DCS failed to establish that A.J. was a CHINS, as the evidence presented

established only that A.J. was in the same household at the time the injuries to A.B. were inflicted.

[17] DCS notes that the CHINS statutes do not require the trial court to wait until a tragedy occurs to intervene. *In re R.S.*, 987 N.E.2d 155, 158 (Ind. Ct. App. 2013). DCS argues that A.J. was endangered by Father's actions concerning A.B. and because of what A.J. had apparently witnessed in Father's home, as A.J. indicated that he was afraid for A.B. and Je.L.

[18] The problem with DCS's argument is that DCS alleged, and the trial court found, that A.J. was a CHINS based on the neglect statute, which requires that DCS prove that "the child's physical or mental condition is seriously impaired or seriously endangered *as a result* of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision." I.C. § 31-34-1-1 (emphasis added).

[19] Here, the evidence tends to show that A.J. might have been endangered by being exposed to the intentional injuries inflicted on A.B. However, there was no evidence that A.J.'s physical or mental condition was either seriously impaired or endangered *as a result* of Father's inability, refusal, or neglect to supply A.J. with the necessary food, clothing, shelter, medical care, education, or supervision. That is, even if we assume that A.J. witnessed or knew about the abuse and injury inflicted on A.B., this does not show that he was

endangered as a result of Father's failure to provide A.J. with the necessary "food, clothing, shelter, medical care, education, or supervision." *Id.*

[20] DCS may well have been able to prove that A.J. was a CHINS based on one of the other sections contained in Indiana Code chapter 31-34-1. *See, e.g.*, Ind. Code § 31-34-1-2(a), referred to as the "abuse statute," (providing that a child is in need of services if, before the child becomes eighteen years of age, "the child's physical or mental health is seriously endangered due to injury by the act or omission of the child's parent, guardian, or custodian," and the child needs care, treatment, or rehabilitation that the child is not receiving and is unlikely to be provided or accepted without the coercive intervention of the court); *see also In re Ju.L.*, 952 N.E.2d at 777 (referring to this statute as the "abuse statute."). However, DCS did not allege or argue that A.J. was a CHINS under this "abuse statute." Nor did the trial court find that A.J. was a CHINS under the abuse statute.

[21] Instead, at the fact-finding hearings, DCS argued that it was relying on the "rebuttable presumption that a child is a [CHINS] under Indiana Code 31-34-12-4[.]" Tr. p. 88. This section provides:

> A rebuttable presumption is raised that **the child** is a child in need of services because of an act or omission of the child's parent, guardian, or custodian if the state introduces competent evidence of probative value that:
>
> (1) *the child has been injured;*
>
> (2) at the time **the child** was injured, the parent, guardian, or custodian:

(A) had the care, custody, or control of **the child**; or

(B) had legal responsibility for the care, custody, or control of **the child**;

(3) the injury would not ordinarily be sustained except for the act or omission of a parent, guardian, or custodian; and

(4) there is a reasonable probability that the injury was not accidental.

Ind. Code § 31-34-12-4 (emphasis added). This section, however, applies a rebuttable presumption only to "the child" who was injured. *See In re C.K.*, 70 N.E.3d 359, 374 (Ind. Ct. App. 2016) (holding that rebuttable presumption applied where injuries to child while in his mother's care were of a type not normally sustained except for an act or omission of a parent and were not accidental); *In re C.B.*, 865 N.E.2d 1068, 1073 (Ind. Ct. App. 2007) (holding that evidence was sufficient to give rise to rebuttable presumption where child sustained injuries indicative of abuse while in mother's care). Thus, although it was applicable to A.B., it is inapplicable to A.J., who himself was not injured.

[22] We are therefore faced with a situation where one of three children living with Father was obviously abused by someone in the household. Indeed, A.B. had no more incidents of unusual bruising after being removed from his mother, J.L., and her boyfriend, Father. However, DCS presented no evidence, nor did it even argue, that A.J. himself was subject to any abuse. There was also no evidence that that A.J. was endangered as a result of Father's (or anyone else's) inability or refusal to provide him with the necessary food, clothing, shelter, medical care, education, or supervision. To the contrary, DCS's own witnesses

testified that there was no indication that A.J. had ever been deprived of these necessities.

[23] DCS argued only that A.J. was in need of services because he was in the same household as A.B., who was obviously the subject of physical abuse, and that he was concerned or afraid for the safety of A.B. and Je.L., whom he considered his brothers. However, none of this proves that A.J. was in need of services under the "neglect statute" alleged by DCS in the CHINS petition.

[24] Generally speaking, a child may not be adjudicated to be a CHINS on grounds other than that alleged by DCS in its petition. *See In re S.A.*, 15 N.E.3d 602 (Ind. Ct. App. 2014) (holding that father's disclosure that he suffered from PTSD could not provide grounds for continuing child's adjudication as a CHINS because father's PTSD was not presented in the CHINS petition as a basis for DCS involvement), *aff'd on reh'g*, 27 N.E.3d 287 (Ind. Ct. App. 2015).

[25] As this court explained in *In re Ju.L.*, a CHINS petition must contain both "[a] citation to the provision of juvenile law that gives the juvenile court jurisdiction in the proceeding" and "[a] concise statement of the facts upon which the allegations are based, including the date and location at which the alleged facts occurred." 952 N.E.2d at 778 (citing I.C. § 31-34-9-3). "We have interpreted these provisions as necessary to provide a parent, custodian, or guardian with proper notice in a CHINS proceeding so that the parent or guardian may refute the assertions." *Id.*

Still, issues not raised by the pleadings may be tried by the express or implied consent of the parties. *Id.* (citing *In re V.C.*, 867 N.E.2d 167, 178-79 (Ind. Ct. App. 2007)). Thus, in *In re Ju.L.* DCS included language reflecting the neglect statute in its CHINS petition. *Id.* at 777. However, in the factual allegations of the petition, the DCS included language which also implicated the abuse statute. *Id.* at 779-80. Thus, the court in *In re Ju.L.*, rejected the mother's claim that she was not on notice that her child could be found to be a CHINS under the abuse statute. *Id.* at 780.

The same was true in *In re V.C.*, in which we held that the mother did have adequate notice that evidence would be presented regarding the abuse statute. 867 N.E.2d at 178. In that case, the child's father had requested that DCS amend the CHINS petition to allege that the child was a CHINS under the abuse statute. *Id.* We held that this action constituted sufficient notice that the child could be adjudicated a CHINS under the abuse statute, even though DCS never actually amended the petition. *Id.*

A contrary result was reached in *Maybaum v. Putnam Cnty. Office of Family & Children*, 723 N.E.2d 951 (Ind. Ct. App. 2000). In that case, the local Office of Family and Children ("OFC"), the predecessor agency to DCS, alleged that the child was a CHINS because she had been the victim of a sex offense committed by her father, which, if proven, would make the child a CHINS under Indiana Code section 31-34-1-3. *Maybaum*, 723 N.E.2d at 953. The trial court, however, found the girl to be a CHINS under the abuse statute because her father had failed to protect her from injury, not because he had committed the abuse

himself. *Id.* On appeal, we determined that the OFC did not "present any specific evidence which would have placed the Maybaums' attorney on notice that it was attempting to show that one of [the girl]'s siblings or another person, not [the girl]'s father," had caused her sexual injury. *Id.* Accordingly, we held that the trial court had erred by finding that the girl was a CHINS on grounds other than those alleged by OFC in its CHINS petition. *Id.*

[29] The circumstances of this case are much closer to *Maybaum* than either *In re V.C.* or *In re Ju.L.* Here, DCS alleged only that A.J. was a CHINS based on section 31-34-1-1, the neglect statute. Yet DCS presented no evidence that A.J. was a CHINS under this statute, i.e. that his physical or mental condition was either seriously impaired or endangered *as a result of* Father's inability, refusal, or neglect to supply A.J. with the necessary food, clothing, shelter, medical care, education, or supervision. Nor was there any indication at the fact-finding hearings that DCS intended to argue A.J. was a CHINS under the abuse statute, or any other of the CHINS statutes for that matter. Even on appeal, DCS limits its argument to the neglect statute. Also, the trial court's CHINS order does not appear to be based on any other statute than that alleged by DCS in its CHINS petition.

[30] We are therefore compelled to conclude that DCS did not establish, even by a preponderance of the evidence, that A.J. was in need of services under the neglect statute, as alleged by DCS. Indeed, the trial court's order adjudicating A.J. a CHINS does not even hint that any of the requirements of the neglect

statute were met as far as A.J. is concerned. Instead, the trial court's order understandably focused on the intentionally inflicted injuries to A.B.

## Conclusion

[31] Although we understand why the trial court would declare A.J. to be in need of services as a result of the abuse inflicted on A.B. while A.J. was in the same household, DCS simply failed to present any evidence that A.J. was a CHINS under the statute alleged in its petition. Accordingly, we reverse the trial court's adjudication that A.J. is in need of services.[5]

[32] Reversed.

Kirsch, J., dissents without opinion.

Altice, J., concurs.

---

[5] We express no opinion on whether DCS can file another CHINS petition and seek to have A.J. adjudicated to be a CHINS under another section of the Indiana Code such as the abuse statute.