

FILED

Jul 15 2020, 8:46 am

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark E. Small
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Abigail Recker
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of:

D.S. (Minor Child),

And

A.P. (Mother),

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner.*

July 15, 2020

Court of Appeals Case No.
20A-JC-777

Appeal from the Greene Circuit Court

The Honorable Erik C. Allen, Judge

Trial Court Cause No.
28C01-2001-JC-9

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Respondent, A.P. (Mother), appeals the trial court's adjudication of her minor child, D.S. (Child), as a Child in Need of Services (CHINS).

We reverse.

# ISSUE

Mother presents this court with one issue on appeal, which we restate as follows: Whether the trial court erred by adjudicating Child to be a CHINS.

# FACTS AND PROCEDURAL HISTORY

Mother is the biological parent to Child, born on September 1, 2015. On November 22, 2016, the trial court adjudicated Child to be a CHINS in a prior CHINS proceeding due to Mother testing positive for amphetamine and methamphetamine and her admission to having a substance abuse problem. This wardship was eventually dismissed.

In February 2019, the Department of Child Services (DCS) received a report alleging that Mother was using and selling marijuana in her home, as well as her residence being in "dirty home conditions." (Transcript p. 15). On April 23, 2019, DCS and Mother entered into an Informal Adjustment.[1] Between April 2019 and August 2019, Mother failed to submit to 14 out of 22 drug

---

[1] An Informal Adjustment is a negotiated agreement between a family and DCS whereby the family agrees to participate in various services in an effort to prevent the child or children from being formally deemed CHINS. *See* Ind. Code § 31-34-8 *et seq.*

screens despite different formats of drug testing being used. Although the Informal Adjustment period was extended, Mother failed to comply with the minimal requirements: random drug screens and substance abuse services. Mother admitted to using marijuana on several occasions and emphasized that she abuses marijuana when she feels "stressed or overwhelmed." (Tr. p. 18). However, Mother claimed to only use marijuana when the Child is not in her care. Mother has never appeared to be under the influence to DCS.

[6] On January 16, 2020, DCS filed a petition requesting Child to be adjudicated a CHINS due to Mother's use of illegal substances endangering the Child and requiring coercive intervention to compel Mother's compliance with the terms of the Informal Adjustment. On February 27, 2020, the trial court conducted a factfinding hearing. During the hearing, DCS's Family Case Manager (FCM) testified that the Child was neglected because Mother "tested positive for marijuana on several occasions so marijuana use is still an issue" and Mother "has not been able to obtain employment as of yet" to financially support the family. (Tr. p. 22). The FCM clarified that a safety plan was in place in which Mother is supposed to have Maternal Grandmother care for the Child should Mother use drugs. FCM was unsure that Mother was a "sober caregiver at all times." (Tr. p. 22). While the basic needs of the Child were being met, the FCM opined that Mother required more time to address her marijuana abuse and to obtain stable employment. She advised that "court intervention is needed due to the lack of engagement and participation throughout the entire Informal Adjustment and Informal Adjustment extension, we just not have had

the participation and engagement that was needed for the Informal Adjustment." (Tr. p. 23). DCS proposed to maintain the Child in Mother's care in the home, which was in appropriate condition at the time of the hearing. On February 27, 2020, the trial court adjudicated Child to be a CHINS. On March 17, 2020, after a dispositional hearing, the trial court ordered Mother to participate in services.

[7] Mother now appeals. Additional facts will be provided if necessary.

# DISCUSSION AND DECISION

[8] Mother contends that the trial court abused its discretion in finding Child to be a CHINS. In order to adjudicate a child as a CHINS, DCS must prove by a preponderance of the evidence that:

> (1) The child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent . . . to supply the child with necessary food, clothing, shelter, medical care, education, or supervision:
>
>> (A) When the parent, guardian, or custodian is financially able to do so; or
>>
>> (B) Due to the failure, refusal, or inability of the parent, guardian, or custodian to seek financial or other reasonable means to do so; and
>
> (2) The child needs care, treatment or rehabilitation that:
>
>> (A) The child is not receiving; and

(B) Is unlikely to be provided or accepted without the
coercive intervention of the court.

I.C. § 31-34-1-1 (2019). In making its determination, the trial court should consider the family's condition not just when the case was filed, but also when it was heard. *In re S.D.*, 2 N.E.3d 1283, 1290 (Ind. 2014). A CHINS adjudication cannot be based solely on conditions that have ceased to exist. *In re S.A.*, 15 N.E.3d 602, 611 (Ind. Ct. App. 2014), *trans. denied*. The adjudication must be based on the evidence presented in court and not on the allegations in the pleadings. *Maybaum v. Putnam Co. O.F.C.,* 723 N.E.2d 951, 954 (Ind. Ct. App. 2000). In reviewing a CHINS determination, we do not reweigh evidence or assess witness credibility. *Matter of N.C.*, 72 N.E.3d 519, 523 (Ind. Ct. App. 2017). We consider only the evidence in favor of the trial court's judgment, along with any reasonable inferences arising therefrom. *Id.*

Mother maintains that the trial court erred in adjudicating Child a CHINS because there was no evidence Child was in any danger, or that her needs would go unmet in the absence of the coercive intervention of the trial court. The purpose of a CHINS inquiry is to determine whether a child's circumstances require services that are unlikely to be provided without the intervention of the court, and thus, the focus of a CHINS adjudication is on the condition of the child alone, not on the culpability of one or both parents. *In re N.E.*, 919 N.E.2d 102, 105-06 (Ind. 2010). Nonetheless, "[n]ot every endangered child is a child in need of services, permitting the State's *parens patriae* intrusion into the ordinarily private sphere of the family." *In re S.D., 2*

N.E.3d at 1287. Rather, a CHINS adjudication under Indiana code section 31-34-1-1 requires proof of three basic elements: the parent's actions or inactions have seriously endangered the child; the child's needs are unmet; and "perhaps most critically," those needs are unlikely to be met unless the State intervenes. *Id.* It is the last element that guards against unwarranted State interference in family life. *Id.* State intrusion is warranted only when parents lack the ability to provide for their children. *Id.* In other words, the focus is on the best interests of the child and whether the child needs help that the parent will not be willing or able to provide. *Id.* Despite a "certain implication of parental fault in many CHINS adjudications, the truth of the matter is that a CHINS adjudication is simply that—a determination that a child is in need of services." *In re N.E.* 919 N.E.2d at 105.

[10] The evidence reflects that Mother admitted to having a substance abuse problem, especially when she felt stressed or overwhelmed. Although Mother agreed to participate in services through an Informal Adjustment—which was extended once—she failed to submit consistently to drug screens and conceded to using marijuana on several occasions. FCM became concerned about Mother's drug use as it was uncertain that Child had a "sober and appropriate caregiver" at all times despite Mother's denial to ever using marijuana while the Child was in her care. (Tr. p. 22).

[11] In *Perrin v. Marion County Officer of Child Services*, 866 N.E.2d 269, 271 (Ind. Ct. App. 2007), mother was arrested as part of a routine probation sweep which located paraphernalia commonly used for methamphetamine consumption in

the bedroom of a houseguest. Mother admitted to using methamphetamine a few days prior to the probation sweep. *Id*. at 272. As a result of her arrest, DCS filed a petition alleging her daughter to be a CHINS based on mother's failure to provide her child with a safe and stable home, free from drugs and neglect. *Id*. The trial court granted DCS's petition. *Id*. at 273. In reviewing the evidence, we noted that the evidence did not support a finding that mother used methamphetamine in front of the child. *Id*. at 276. We reversed the trial court's determination on appeal, finding that a "single admitted use of methamphetamine outside of the presence of the child and without more, is insufficient to support a CHINS determination." *Id*. at 277.

[12] Likewise, in *Ad.M v. Indiana Department of Child Services*, 103 N.E.3d 709, 713-14 (Ind. Ct. App. 2018), we reversed a CHINS determination because "evidence of one parent's use of marijuana and evidence that marijuana ha[d] been found in the family home, without more, does not demonstrate that a child has been seriously endangered for purposes of Indiana Code [s]ection 31-34-1-1." We noted that DCS did not present any evidence that either mother's drug use or the presence of marijuana in the home seriously endangered the children. *Id*. at 714. Rather, the permanency case manager admitted that she "really [couldn't] see the way" mother's marijuana use impacted the children. *Id*. Further, DCS did not present any evidence that mother used drugs while the children were present in the home or while she had care of the children. *Id*. Relying on our jurisprudence, we concluded that the children cannot be adjudicated as CHINS despite mother's history of marijuana use because there was no evidence that, at

any point in time, any of the children were endangered, that the parents had ever used drugs in the presence of the children, or that there was ever an occasion in which the parents were impaired by substance abuse while the children were in their care. *Id.*

[13] Similarly, here, despite Mother's admitted drug use, DCS did not present any evidence that Mother used marijuana while the Child was in the home or that DCS had ever perceived Mother to be under the influence of drugs. The FCM conceded that "the basic needs of the [Child] are being met" and a safety plan was in effect that placed the Child with Maternal Grandmother if Mother felt overwhelmed and in need of marijuana. (Tr. p. 23). The FCM's concern, without more, that "[i]llegal substance use impairs your thinking, your response, . . . your normal thought processes and action" is not sufficient to support a CHINS determination. As DCS did not carry its burden that Mother's actions or inactions have seriously endangered the Child, we conclude that the trial court erred when it adjudicated Child to be a CHINS.

## CONCLUSION

[14] Based on the foregoing, we hold that the trial court erred in adjudicating Child to be CHINS.

[15] Reversed.

[16] Mathias, J. and Tavitas, J. concur